UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOHN E. STAFFORD,

     Plaintiff,                        Case No. 3:22-cv-136

vs.

SUGARCREEK TOWNSHIP, *et al.*,       District Judge Michael J. Newman

     Defendants.

---

**ORDER: (1) GRANTING THE THREE PENDING MOTIONS FOR SUMMARY JUDGMENT (Doc. Nos. 175, 185, 186); (2) GRANTING SUMMARY JUDGMENT AGAINST ALL OF STAFFORD'S FEDERAL CLAIMS; (3) DISMISSING WITHOUT PREJUDICE STAFFORD'S STATE-LAW CLAIMS; AND (4) TERMINATING THIS CASE ON THE DOCKET**

---

This civil case concerns the arrest of Plaintiff John E. Stafford ("Stafford") after he brandished his firearm during an argument with a group of golfers at the Sugar Valley Golf Course near Dayton, Ohio. *See* Doc. No. 30. Stafford brings federal constitutional claims pursuant to 42 U.S.C. § 1983, and multiple state-law claims. *Id*. Defendants are Sugarcreek Township and the officers responsible for Stafford's arrest; the news station WHIO-TV and anchorman James Brown, who reported Stafford's arrest (collectively, the "WHIO-TV Defendants"); and the golf club where the confrontation occurred, Sugar Valley Country Club/Golf Club ("Sugar Valley"), and its owner, James Keyes (collectively, the "Golf Club Defendants"). *See id.*

These three groups of Defendants now each move for summary judgment. The first of these motions is filed by Defendants Sugarcreek Township, Chief Michael Brown, Officer Adam Klark, Sergeant Mark D. White, and Detective Lesley Stayer (collectively, the "Police

Defendants").[1]  Doc. No. 175.  The WHIO-TV Defendants and the Golf Club Defendants likewise now move for summary judgment.  Doc. Nos. 186, 185.  Stafford, through counsel, filed opposition memoranda in response to all three dispositive motions.  Doc. Nos. 205, 206, 210.  The Police Defendants and the WHIO-TV Defendants both filed reply memoranda.  Doc. Nos. 215, 214.  The Golf Club Defendants did not, and the time for doing so has passed.  S.D. Ohio Civ. R. 7.2(a)(2). Therefore, the motions for summary judgment are ripe for review.  For the reasons that follow, the Court, having carefully reviewed the parties' arguments and the evidence in this matter, finds in favor of Defendants on Stafford's federal claims, and dismisses without prejudice his state-law claims.

## I.  BACKGROUND

The following factual review is based on the deposition testimony and attached exhibits submitted by the parties in support of their pending motions and memoranda as well as body worn camera ("BWC") footage[2] recorded during Stafford's arrest, which the Court has reviewed.

### A.  The Golf Course Confrontation

The confrontation between Stafford and the golfers occurred on May 24, 2021.  Doc. No. 164 at PageID 1164.  Prior to that date, Stafford was well known in his community for owning a local jewelry business, Stafford Jewelry, and for his outspoken positions beginning in 2019 on the Sugarcreek-Bellbrook School District levy.  *Id.* at PageID 1179-80.

At the time of the events at issue, Stafford lived adjacent to Sugar Valley's golf course. Doc. No. 30 at PageID 246.  His property line extended into the fairway of hole number five.  Doc.

---

[1] The Police Defendants occasionally name Sugarcreek Township Police Department as a fellow Defendant in their summary judgment motion, but the Court previously dismissed Sugarcreek Township Police Department as a Defendant in this case.  *See* Doc. No. 112.

[2] The Court granted the Police Defendants leave to manually file the body camera footage.  Doc. Nos. 172; 187; *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

No. 164 at PageID 1167. The former owner of Stafford's property granted Sugar Valley a perpetual easement and right of way for the exclusive use of the property to be used as part of its golf course. *Id.* at PageID 1170; Doc. No. 164-9 at PageID 1314-19. There were no signs or other signifiers on the golf course, however, that would alert a golfer to the fact that Stafford's property extended into the fairway. Doc. No. 164 at PageID 1169-70.

On May 24, Stafford got into an altercation with a group of golfers at Sugar Valley. *Id.* at PageID 1171. That day, Stafford was taking his 150-pound rottweiler out for a walk when he heard a group of golfers on the golf course. *Id.* As Stafford and his dog walked to his backyard, he saw golf carts take off down through the fairway. *Id.* One of the golfers had apparently hit his ball out of bounds along the fifth fairway and into the yard of Stafford's neighbor. *Id.* at PageID 1171-72. One golfer drove a golf cart into the area of the neighbor's yard where he (or another golfer) bent down to grab his golf ball. *Id.* He missed, requiring the driver to circle the cart around for another try. *Id.* at PageID 1172.

Stafford yelled at the golfers that they were not supposed to drive on the fairway with the golf carts or be in the neighbor's yard. *Id.* According to Stafford, the golfers responded, "f_ _ _ you, it's not your yard" to which Stafford replied, "no, f_ _ _ you." *Id.* at PageID 1173-74. The golfers proceeded to retrieve the ball and then drove to meet other golfers on the green. *Id.* at PageID 1173. Stafford started to walk away, but stopped and turned back when the golfers yelled at him again from approximately the distance of a football field away. *Id.* at PageID 1174, 1177. Stafford maintains that the golfers, led by Steve Clark, started coming towards him. *Id.* at PageID 1174. One golfer warned Clark that Stafford had both his dog and "a gun in his pocket." *Id.* at PageID 1175. In response, Stafford yelled "you'd better listen to them." *Id.* Stafford's rottweiler was also barking during the exchange. *Id.*

3

Stafford acknowledged during his deposition that he then pulled his loaded gun out of his pocket and pointed it at Clark who was standing about six feet from him in the fairway near Stafford's property line. *Id.* at PageID 1176. When asked during his deposition why he pulled a gun, Stafford explained:

> Well, I have someone coming down that's -- that's a big guy, he's intoxicated, he says he's going to kill me, kill my dog. I've got someone else yelling, you know … to crack my dog … in the f_ _ _ing skull. You know, I believed they were going to kill me. My intention of pulling out the gun, if he would have come any closer I would have shot him dead. He had a -- had a golf club in his hand and it was raised and he's telling me he's going to kill me and my dog.

*Id.* While pointing the gun at Clark, Stafford exclaimed, "you're not going to f_ _ _ anybody up." *Id.* at PageID 1177. According to Stafford, Clark stopped, and "his face went in a panic[.]" *Id.* Eventually, Stafford put the gun back into his pocket. *Id.* at PageID 1176.

### B. Officer Klark, Sergeant White, and Detective Stayer's Investigation

As a result of the incident, multiple witnesses called 911, and police officers soon arrived on site. Doc. 30 at PageID 262; 249. Officer Adam Klark arrived first and met Stafford in his driveway with his dog. Doc. No. 167 at PageID 1652. When speaking with Stafford, Officer Klark asked Stafford to take his dog into his house. 2021-05-24_20-28-40 (Klark 1).AVI ("Klark BWC Video 1"). Officer Klark also took custody of Stafford's gun and placed it in his cruiser. *Id.* Stafford then proceeded to tell Officer Klark his version of what had happened. *Id.*

Sergeant Mark White arrived at the scene during Officer Klark's conversation with Stafford. Doc. No. 164 at PageID 1180. After speaking with Officer Klark and Sergeant White, Stafford went inside his home, with Officer Klark's permission, to draft a written statement. *Id.*; Klark BWC Video 1. Ultimately, Stafford did not give the police his statement until the next day. Doc. No. 164 at PageID 1185.

Officer Klark and Sergeant White then proceeded to a nearby cul-de-sac to speak with the

4

golfers and other witnesses about the incident. Doc. No. 167 at PageID 1661. Detective Lesley Stayer also responded to the call and initially went to the Sugar Valley clubhouse. Doc. No. 168 at PageID 1980. Detective Stayer spoke to several individuals and took statements from two witnesses before going to Officer Klark's and Sergeant White's location. *Id.* at PageID 1982; 1993-94.

During the investigation with the golfers, Sergeant White had a phone call with Chief Michael Brown. Doc. No. 170 at PageID 2562; 2021-05-24_20-35-01 (White 1).AVI ("White BWC Video 1"). Sergeant White discussed the incident with Chief Brown and Chief Brown informed him about Sugar Valley's easement on Stafford's property. White BWC Video 1. During the phone call, Chief Brown stated, "I would go for it. Go ahead and press charges. We've been screwing with him forever." *Id.*; Doc. No. 170 at PageID 2565.

The officers continued with their investigation after the Chief Brown phone call. White BWC Video 1. While Officer Klark and Sergeant White were taking statements from the golfers, they were shown a cellphone video recording of the confrontation between the golfers and Stafford after Stafford put his gun back into his pocket. Doc. No. 167 at PageID 1667, 1669.

After talking with Stafford, the golfers, other witnesses, and reviewing the video of the post-incident confrontation, Officer Klark and Sergeant White together decided to arrest Stafford for aggravated menacing. *Id.* at PageID 1691-92. Although Detective Stayer was present and took witness statements, she testified during her deposition that she only provided information to the two officers and did not participate in the decision to arrest Stafford. Doc. No. 168 at PageID 1989-93; *see* Doc. No. 167 at PageID 1849. Officer Klark arrested Stafford with Sergeant White and Detective Stayer present. Doc. No. 205-1 at PageID 4187; 2021-05-24_21-19-48 (White 2).AVI ("White BWC Video 2"); 2021-05-24_21-20-05 (Klark 2).AVI ("Klark BWC Video 2").

5

Officer Klark handcuffed Stafford and put him in the back of his cruiser. Doc. No. 167 at PageID 1693; Klark BWC Video 2.

### C. Stafford's Arrival at Sugarcreek Township Police Station

Officer Klark transported Stafford to the Sugarcreek Township police station ("police station"). Doc. No. 167 at PageID 1694. Once they arrived, Officer Klark drove Stafford into the police station sally port, where officers typically take an arrestee before escorting them into the police station and processing room. *Id.* at PageID 1695-96, Doc. No. 170 at PageID 2483-84. However, Stafford was not taken into the processing room this way because Officer Klark noticed that WHIO-TV anchorman James Brown was in the back of the sally port door area. Doc. No. 167 at PageID 1697-98. Officer Klark testified that because he assumed Brown wanted to get camera footage, he drove his cruiser out of the police station sally port, around the building, and arrived at the fire department bay where the fire trucks are stored. *Id.* at PageID 1698-99. The police station and the fire department are located on opposite ends of the same building. *Id.* at PageID 1699-1700; Doc. No. 170-2 at PageID 2721. Officer Klark and Detective Stayer took Stafford into the police station through the fire bay entrance and walked him to the processing room. Doc. No. 167 at PageID 1700. Officer Klark explained he "didn't want [Stafford] to be recorded due to his business." *Id.* at PageID 1697-98, 1768, 1832.

Brown first became aware of the situation when a confidential source informed him that there had been an incident at Sugar Valley's golf course during which someone pulled a gun. Doc. No. 174 at PageID 2957-59. After learning this, Brown called Sergeant White to confirm whether something had happened on the golf course. *Id.* at PageID 2973. Sergeant White was Sugarcreek Township's Public Information Officer—the liaison between the police department and the media. Doc. No. 170 at PageID 2634-35, 2451. Sergeant White told Brown that he was on his way to the

6

scene to investigate a person with a gun. *Id.* at PageID 2448-49, 2478. Within a short time, Brown called Sergeant White again and asked if the subject of the investigation was Stafford and whether he was being arrested. *Id.* at PageID 2480; Doc. No. 174 at PageID 2973. Sergeant White confirmed Stafford's arrest and informed Brown that Stafford was being transported to the police station. Doc. No. 170 at PageID 2637-39; Doc. No. 174 at PageID 2973-75.

Brown proceeded to the police station in an effort to obtain video of Stafford's arrest. Doc. No. 174 at PageID 3004-05. Using his cell phone, Brown recorded Stafford walking into the building. Doc. 170 at PageID 2497. He recorded the video through the fire bay windows. *Id.* The recording is approximately 10 seconds, with Stafford in it for less than two seconds. Doc. No. 174 at PageID 3147. Later that evening, WHIO-TV broadcast a news report about Stafford's arrest and a portion of the video taken by Brown. *See* Doc. No. 164 at PageID 1184, 1204.

### D. Stafford's Booking and Prosecution

Once Stafford was inside the station, he was fingerprinted, provided a copy of the citation, talked to his attorney, and then released. *Id.* at PageID 1184. He was at the station for approximately twenty minutes. Doc. No. 170 at PageID 2454-55. Stafford's wife picked him up and he went home. Doc. No. 164 at PageID 1185. Later that day, Officer Klark prepared the incident report. Doc. No. 167 at PageID 1662-63. The matter was turned over to the Xenia prosecutors and was later referred to a special prosecutor. Doc. No. 170 at PageID 2511-12. Eventually, the special prosecutor dismissed with prejudice the charge of aggravated menacing against Stafford. Doc. No. 30 at PageID 251. This civil litigation followed.

## II. CLAIMS[3]

Stafford's pending federal constitutional claims are:

---

[3] In Stafford's opposition memoranda, he concedes that he was unable to develop sufficient facts to support several of the claims originally brought in his amended complaint. *See* Doc. No 205 at PageID 4179; Doc.

1. Violations of his rights under the Fourth Amendment against the Police Defendants and WHIO-TV Defendants: (a) unreasonable seizure and (b) intrusion into privacy;

2. Malicious Prosecution against the Police Defendants;

3. Failure to investigate, train and/or supervise employees ("*Monell* Claims") against the Police Defendants;[4]

4. Civil Conspiracy against the Police Defendants and the WHIO-TV Defendants.

Doc. No. 30.

In his memorandum in opposition to the Golf Club Defendants' motion for summary judgment, Stafford concedes several of his claims, including his only federal law claim, alleged against the Golf Club Defendants. *See* Doc. No. 210 at PageID 4286-97. Thus, there are no pending federal law claims against the Golf Club Defendants.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that no genuine issue of material fact is present, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must

---

No. 206 at PageID 4230; Doc. No. 210 at PageID 4286-94. Accordingly, the Court dismisses (1) Stafford's federal claim for malicious interference with his constitutional rights (brought against the Police Defendants and the WHIO-TV Defendants) and (2) his federal civil conspiracy claim (brought against the Golf Club Defendants).

[4] In Stafford's amended complaint, he brings his failure to investigate and failure to train claims against all Police Defendants. Doc. No. 30 at PageID 266-68. These claims are properly brought against the Police Defendants in their official capacity only, which is the same as the claim against Sugarcreek Township. *See Claybrook v. Birchwell*, 199 F.3d 350, 356 n.4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents" (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))).

either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B).

A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party—in this instance, in the light most favorable to Stafford. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he non-moving party … may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted). "[T]here is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.* at 406.

## IV. ANALYSIS

Stafford's federal constitutional claims arise, as noted, under § 1983. To succeed on a § 1983 claim, he must establish a violation of his rights secured by the Constitution or laws of the United States by a person acting under color of state law. *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023).

### A. The Police Defendants' Motion for Summary Judgment

#### 1. Eleventh Amendment Immunity

Stafford brings claims against the Police Defendants in both their individual and official

9

capacities.

The Eleventh Amendment expressly provides that federal courts have no jurisdiction over "any suit in law or equity" filed "against one of the United States." U.S. Const. amend. XI. This sovereign immunity also extends to state officials sued in their official capacities. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). The United States Supreme Court has recognized a narrow exception to Eleventh Amendment immunity for lawsuits against government officials in their official capacities if a plaintiff seeks only non-monetary relief. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908). The *Ex Parte Young* exception permits a plaintiff suing a defendant in his or her official capacity to "seek prospective relief to end a continuing violation of federal law." *Doe v. Wright State Univ.*, No. 3:16-cv-469, 2017 WL 3671240, at *4 (S.D. Ohio Aug. 24, 2017) (citing *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2014)).

In this case, the *Ex Parte Young* exception does not apply. Stafford's amended complaint seeks only monetary relief. Doc. No. 30 at PageID 274-75. Specifically, it seeks: (1) monetary, compensatory relief; (2) punitive relief; (3) attorneys' fees and costs; and (4) pre-judgment interest. *Id.* Stafford's claims against the Police Defendants in their official capacities are therefore barred by the Eleventh Amendment. Thus, the only remaining claims are claims for monetary damages against Sugarcreek Township and the officer Defendants in their individual capacities.

### 2. Fourth Amendment Unreasonable Seizure and Intrusion into Privacy

#### a. Probable Cause

Stafford's Fourth Amendment claims against the Police Defendants focus on the events that led to, and occurred during, his arrest on May 24, 2021.

The Police Defendants contend that qualified immunity shields them from Stafford's Fourth Amendment claims because, even though Stafford's criminal charge was ultimately dismissed by the special prosecutor, probable cause supported their decision to arrest him for

aggravated menacing. Doc. No. 175 at PageID 3265-66. Consequently, they argue, Stafford cannot show the Police Defendants violated his Fourth Amendment rights. *Id.*

"'Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known.'" *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). "At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6th Cir. 2018) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). "In so doing, the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact'; that is, 'evidence on which [a] jury could reasonably find for the plaintiff.'" *Bunkley*, 902 F.3d at 559 (quoting *Anderson*, 477 U.S. at 252 (1986)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. An officer may reasonably arrest a suspect without first obtaining a warrant "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). An arrest can be valid even if the suspect did not commit a crime. *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979). An arrest is invalid only if the plaintiff proves that the officer could not have reasonably believed that the arrest was lawful in light of the information known to the officer at the time of the arrest. *Green v. Throckmorton,* 681 F.3d 853, 865 (6th Cir. 2012); *see Logsdon v. Hains,* 492 F.3d 334, 341 (6th Cir. 2007).

Probable cause to arrest a suspect exists "if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Arnold v. Wilder,* 657 F.3d 353, 363 (6th Cir. 2011) (internal quotations and citations omitted). "[T]he facts known to the arresting officer at the time of the arrest" form the basis of the asserted probable cause. *Devenpeck,* 543 U.S. at 152. The officer's conclusion—that probable cause exists—must be supported by "reasonably trustworthy information." *Beck v. Ohio,* 379 U.S. 89, 91 (1964). The officer must consider both exculpatory and inculpatory information in deciding whether probable cause exists. *Logsdon,* 492 F.3d at 341. However, "after the officer determines, on the basis of the facts and circumstances known to him [or her], that probable cause exists," the officer is not required to search for exculpatory evidence. *Id.* (citations omitted); *Crable v. City of Cleveland,* No. 24-3316, 2024 WL 5656461, at *3 (6th Cir. Dec. 19, 2024) ("[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"). "'In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" *Clark v. Abdallah*, 131 F.4th 432, 453 (6th Cir. 2025) (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020)).

The Police Defendants arrested Stafford for aggravated menacing under Ohio Revised Code § 2903.21(A). Section 2903.21(A) provides, "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, . . . or a member of the other person's immediate family." Ohio Rev. Code § 2903.21(A).

Prior to his arrest, Stafford admitted to Officer Klark that he pointed his gun at the golfers. Klark BWC Video 1. These acts—brandishing a gun and pointing it at the golfers, even if

12

briefly—were sufficient to give the officers probable cause to arrest him for aggravated menacing. *See Crable*, 2024 WL 5656461, at *3 ("Crable's brandishing a gun and pointing it at Aaron and Sonya, even if briefly, is sufficient to give the officers probable cause to arrest him for aggravated menacing"). In addition, Officer Klark, Sergeant White, and Detective Stayer obtained and considered numerous witness statements from golfers and third-party witnesses before arresting Stafford. For example, "Stafford pulled a gun on hole 5. . . [h]e tried to start a fight with calling everyone assholes and trying to get his dog to attack" (Doc. No. 170-4 at PageID 2748); "[a]t this point he pulled a gun from his right pocket and pointed it at 3 of us. Said he would kill us right now" (*Id.* at PageID 2750); "we got close to hear his words[,] he pulled [a] gun and said I will kill all of you" (*Id.* at PageID 2751); "[m]an approached homeowner empty handed, but to argue. Homeowner pulled gun on bearded man" (*Id.* at PageID 2753). Several of the golfers indicated in their statements, and while speaking with the officers, that they felt their lives were in danger. *Id.* at PageID 2748-49, 2751; Klark BWC Video 1. Finally, the officers reviewed the video taken of the incident after Stafford put his gun away. Klark BWC Video 1; White BWC Video 1. The decision was then made to arrest Stafford.

The Police Defendants had sufficient probable cause to arrest Stafford, and Stafford's allegation—that they lacked probable cause—is implausible in view of the golfers' statements, the third-party witness statements, and the video. *See Manuel v. City of Columbus*, 86 F. App'x 852, 855 (6th Cir. 2004) (concluding that police had probable cause to arrest the plaintiff for aggravated menacing under Ohio law where four witnesses claimed that the plaintiff "pointed a gun at them while they were standing at a bus stop"); *Thornton v. City of Columbus*, No. 2:15-cv-1337, 2017 WL 2573252, at *14 (S.D. Ohio June 14, 2017) (noting that "flashing or brandishing a firearm" is sufficient to establish probable cause under Ohio's aggravated menacing statute); *Edvon v.*

*Morales*, No. 106448, 2018 WL 6721311, at *5-6 (Ohio Ct. App. Dec. 20, 2018) (concluding that police had probable cause to arrest the plaintiff for aggravated menacing where the plaintiff exited his apartment and pointed a firearm at two neighbors).  Accordingly, Stafford's Fourth Amendment seizure claim—*i.e.*, that the Police Defendants arrested and seized him in violation of the Fourth Amendment—fails.

Stafford argues the Police Defendants lacked probable cause to arrest him because of his right to self-defense and his rights under Ohio's stand-your-ground statute.  Doc. No. 205 at PageID 4157-59 (citing Ohio Rev. Code §§ 2901.05, 2901.09), 4184.  He contends that the Police Defendants ignored facts supporting these defenses and "cherry picked" facts to arrest him for aggravated menacing.  *Id.* at PageID 4159.  According to Stafford, his self-defense and stand-your-ground rights eliminated any probable cause for arresting him.  *Id.*  The Court disagrees.

"[W]hen a suspect asserts an affirmative defense, this does not automatically vitiate probable cause."  *Frodge v. City of Newport*, 501 F. App'x 519, 527 (6th Cir. 2012).  The officer is not required to accept a suspect's explanation without question, but a police officer "may not ignore information known to him which proves that the suspect is protected by an affirmative legal justification."  *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002) (internal quotation marks omitted).  On the other hand, "[e]ven if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then [the officer] is free to arrest the suspect provided there is probable cause to do so."  *Id.*

Stafford's assertion—that Clark and the other golfers confronted him before he drew his gun—even if true, does not vitiate the Police Defendants' probable cause.  *See Emanuel v. Cnty. of Wayne*, 652 F. App'x 417, 426 (6th Cir. 2016) (concluding that officers would have had probable

14

cause to arrest defendant based on eyewitness statement "even [if defendant] offered an innocent explanation of his deeds at the time of his arrest"); *Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (concluding that defendant's "protestations of self-defense did not suffice to eliminate probable cause"); *State v. Burchett*, No. 20166, 2004 WL 1348112, at *4 (Ohio Ct. App. June 10, 2004) (concluding that "[e]ven if [defendant's] motive was purely defensive," officers had probable cause to arrest defendant for aggravated menacing because "the fact remains that he pointed a gun out the door in the direction of whoever was outside").

The facts known by the Police Defendants at the time of Stafford's arrest do not provide that they would "conclusively know" that he was protected by self-defense. *See Fridley*, 291 F.3d at 873. Prior to his arrest, Stafford informed Officer Klark of the golfers' loud behavior on the fairway, that his property went across the fairway, and that he felt threatened by the golfers' conduct. Klark BWC Video 1. However, the officers also had the statements from the golfers, statements from witnesses, and the video recording from the golfers suggesting Stafford may have been the aggressor—an issue the Court does not decide today. Therefore, a reasonable officer would not conclusively know that Stafford was protected by the defense. *See Young v. Owens*, 577 F. App'x 410, 414 (6th Cir. 2014); *Petsche v. Hruby*, 773 F. Supp. 3d 563, 575 (N.D. Ohio 2025).[5]

### b. Intrusion into Privacy

Apart from challenging the basis for his arrest, Stafford claims the Police Defendants violated his Fourth Amendment rights by improperly intruding upon his right to privacy and

---

[5] Stafford also relies on Ohio's stand-your-ground law to negate the Police Defendants' probable cause. *See* Doc. No. 205 at PageID 4157-60; *see also* Ohio Rev. Code § 2901.09. However, Stafford does not provide any case law that suggests the application of the stand-your-ground law must occur before the case proceeds to trial. *See id.* Nor does he provide any evidence that the Police Defendants, before arresting him, considered whether or not he should have retreated. *See id.*

wrongly seizing him for the purpose of a staged "perp walk." Doc. No. 30 at PageID 273. Stafford's privacy claim rests upon the Second Circuit's decision in *Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000), which holds that a staged "perp walk" for the benefit of the press violates the Fourth Amendment, at least where it lacks any legitimate law enforcement justification. *Id.* at 213. The Second Circuit reasoned, "the Fourth Amendment shields arrestees from police conduct that unreasonably aggravates the intrusion on privacy properly occasioned by the initial seizure." *Id.* at 212. The Second Circuit thus determined that because the staged "perp walk" in *Lauro* was unrelated to the object of the arrest, had no legitimate law enforcement justification, and invaded the plaintiff's privacy to no purpose, it constituted an unreasonable seizure. *Id.* at 213. However, *Lauro* stresses the limitations of its holding by explaining it "do[es] not address the case— seemingly much more common than the kind of staged perp walk that occurred here—where a suspect is photographed in the normal course of being moved from one place to another by the police." *Id.*

*Lauro* is not a controlling case in the Sixth Circuit.[6] *See S. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 128 F.4th 809, 818 (6th Cir. 2025) (noting that the Sixth Circuit is not bound by out-of-circuit precedent). However, considering whether *Lauro* is persuasive, the events in *Lauro* are readily distinguished from those Stafford experienced. In *Lauro*, the plaintiff had already been arrested and taken to the police station for two hours when an officer received a phone call from the police department's Deputy Commissioner of Public Information stating, "the media were interested in [plaintiff's] case and that [plaintiff] should be taken on a perp walk." *Lauro*, 219 F.3d at 204. An officer then "handcuffed [plaintiff] and walked him out the front door and outside the station house. He then placed [plaintiff] in an unmarked

---

[6] It is unclear to the Court whether Stafford's privacy claim is viable in the Sixth Circuit.

police car, drove around the block, removed [plaintiff] from the car, and walked him back into the station house" while being filmed by a television crew. *Id.* at PageID 204-05. The Second Circuit found that the officer's decision to stage a re-enactment of the plaintiff's "perp walk" into the police station for the benefit of the press violated the Fourth Amendment. *Id.* at 213.

Stafford's arrest, unlike the plaintiff's perp walk in *Lauro*, was neither fictitious nor staged. Here, there is no genuine dispute that Officer Klark drove into the police station's sally port with Stafford but drove out of the sally port after seeing Brown. He then drove around the police station, parked, and walked Stafford into the police station through the fire bay entrance. This is when Brown recorded Stafford as he walked with Officer Klark and Detective Stayer into the station to be processed. Unlike in *Lauro*, not only did Officer Klark attempt to avoid exposing Stafford to the press, but also the Police Defendants' conduct related to Stafford's arrest and had a legitimate law enforcement justification. Thus, the Police Defendants' conduct does not rise to the level of a constitutional violation. *See Watkins v. City of Highland Park*, 232 F. Supp. 2d 744, 760 (E.D. Mich. 2002) ("[C]onduct is not unconstitutional so long as it serves some legitimate law enforcement purpose—as it plainly did here, where Plaintiff was filmed while being transported to the police station"); *Lauro*, 219 F.3d at 204.

### c. Conclusion

For the above reasons, no reasonable juror could conclude that the Police Defendants lacked probable cause to arrest Stafford or intruded on his right to privacy. As such, Stafford has not met his burden to show the Police Defendants violated his Fourth Amendment rights. *See Bunkley* 902 F.3d at 559.

Because Stafford's claims fail on the merits, Chief Brown, Officer Klark, Sergeant White, and Detective Stayer are entitled to qualified immunity regarding those claims. *See Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009). Qualified immunity therefore shields the officer

Defendants from Stafford's Fourth Amendment unreasonable seizure and privacy claims. S*ee King v. City of Rockford*, 97 F.4th 379, 390 (6th Cir. 2024) ("[Q]ualified immunity therefore protects 'all but the plainly incompetent or those who knowingly violate the law'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

### 3. Federal Malicious Prosecution Claim[7]

Stafford's Fourth Amendment malicious prosecution claim against the Police Defendants focuses on the events that occurred during his arrest on May 24, 2021, and the prosecution that occurred thereafter.

To maintain a malicious prosecution claim under § 1983, a plaintiff must show that (1) a criminal prosecution was initiated against him or her and the defendant made, influenced or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

Stafford fails to satisfy at least one element of his malicious prosecution claim. *See id.* As explained above, probable cause supported Stafford's arrest for aggravated menacing and, therefore, the institution of proceedings against him. *See supra* § IV(A)(2)(a). Because probable cause supported Stafford's arrest, he cannot establish, and a reasonable juror could not find, that the Police Defendants maliciously prosecuted him in violation of one or more of his constitutional

---

[7] In his amended complaint, Stafford alleges federal malicious prosecution claims under both the Fourth and Fourteenth Amendments. Doc. No. 30 at PageID 263-65. However, "the Supreme Court held in *Albright v. Oliver*, 510 U.S. 266, 271, 273–75 (1994) that malicious-prosecution claims must be asserted under the Fourth Amendment rather than the Fourteenth." *Jackson v. City of Cleveland*, 925 F.3d 793, 820 n. 14 (6th Cir. 2019). Stafford does not dispute that his malicious prosecution claim brought under the Fourteenth Amendment should be dismissed. *See* Doc. No. 205 at PageID 4155-63. Accordingly, the Court dismisses Stafford's malicious prosecution claim under the Fourteenth Amendment.

rights. *See Burden v. Paul*, 493 F. App'x 660, 665 (6th Cir. 2012). Therefore, the Police Defendants are entitled to summary judgment on Stafford's federal malicious prosecution claim. Chief Brown, Officer Klark, Sergeant White, and Detective Stayer are also entitled to qualified immunity regarding this claim. *See Everson*, 556 F.3d at 499.

### 4. Failure to Investigate/*Monell*

Stafford claims the Police Defendants are liable due to the officers' failure to adequately investigate his self-defense and stand-your-ground rights. Doc. No. 205 at PageID 4168-70. Relatedly, Stafford also claims Sugarcreek Township and Chief Brown are liable under § 1983 for their failure to train the arresting officers on Ohio's self-defense and Ohio's stand-your-ground law. *Id.* However, Stafford's failure to show an underlying constitutional violation likewise means that his claims—for failure to investigate, train, and/or supervise—cannot succeed. *See Chambers v. Sanders*, 63 F.4th 1092, 1101-02 (6th Cir. 2023) ("[T]here can be no liability under *Monell* without an underlying constitutional violation"); *Hunsperger v. Tuscarawas Cnty.*, No. 5:22-cv-00326, 2024 WL 3992275, at *4 (N.D. Ohio Aug. 28, 2024) (and cases cited therein).[8] Thus, Chief Brown, Officer Klark, Sergeant White, and Detective Stayer are entitled to qualified immunity regarding these claims as well. *See Everson*, 556 F.3d at 499.

---

[8] In his memorandum in opposition to the Police Defendants' motion for summary judgment, Stafford argues—for the first time—that "Chief Brown ratified the arrest of Stafford." Doc. No. 205 at PageID 4169. Stafford has not properly presented this ratification claim because "[a] plaintiff may not expand [his] claims to assert new theories for the first time in response to a summary judgment motion." *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012) (citing *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)); *see also Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)") (citation omitted). Alternatively, even if the Court assumes Chief Brown ratified his arrest, Stafford still fails to show his arrest violated the Constitution. *See supra* § IV(A)(2).

### 5. Civil Conspiracy

Stafford next claims the Police Defendants are liable under § 1983 for conspiring with the WHIO-TV Defendants[9] to arrest him without probable cause and subject him to a staged "perp walk" in violation of his Fourth Amendment rights against unreasonable seizures. Doc. No. 205 at PageID 4175; *see also* Doc. No. 206 at PageID 4225.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). In order to survive summary judgment, a plaintiff needs to allege facts that, when accepted as true, would allow a juror to find that "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff[] of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290). "Although circumstantial evidence may prove a conspiracy, 'it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nash. Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

Stafford alleges, in a conclusory manner, that the Police Defendants and WHIO-TV Defendants had a shared objective to deprive him of his constitutional rights, but does not point to

---

[9] A plaintiff may not proceed under § 1983 against a private party. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). If, however, private persons—such as the WHIO-TV Defendants—act jointly with state officials to carry out a prohibited action, such persons act under the color of law for purposes of § 1983. *Id.* A private party may be considered a state actor under § 1983 if: (1) "the deprivation complained of was 'caused by the exercise of some right or privilege created by the State;'" and (2) "the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id.* at 590-91 (citation omitted). The Court assumes—but does not find—for the purposes of this civil conspiracy analysis only, that the WHIO-Defendants can be considered state actors under § 1983.

any evidence of a conspiracy. *See* Doc. No. 214 at PageID 4327-28. Although it may not be routine for officers to speak to the media during an active investigation—an issue the Court does not reach or decide today—the record shows that the Police Defendants unilaterally made the decision to arrest Stafford. Since Stafford has not presented evidence suggesting that the Police Defendants and the WHIO-TV Defendants "shared a conspiratorial objective to deprive [Stafford] of [his] constitutional rights," he has not met his burden in response to the Police Defendants' motion for summary judgment. *See Robertson*, 753 F.3d at 622. Assuming, *arguendo*, that Stafford did meet his burden, he still fails to show an underlying constitutional violation. *See supra* § IV(A)(2); *see also Spadafore*, 330 F.3d at 852.

Thus, Stafford cannot establish, and a reasonable juror could not find, that a conspiracy existed between the Police Defendants and the WHIO-TV Defendants. The Police Defendants are entitled to summary judgment on Stafford's § 1983 civil conspiracy claim. Chief Brown, Officer Klark, Sergeant White, and Detective Stayer are entitled to qualified immunity on this claim as well. *See Everson*, 556 F.3d at 499.

### B. The WHIO-TV Defendants' Motion for Summary Judgment

#### 1. Fourth Amendment Unreasonable Seizure and Intrusion into Privacy

For the reasons stated above (*see supra* § IV(A)(2)) and assuming *arguendo* that the WHIO-TV Defendants can be considered state actors under § 1983, Stafford's Fourth Amendment seizure and privacy claims both fail. The WHIO-TV Defendants are entitled to summary judgment on these claims.

#### 2. Civil Conspiracy

For the reasons stated above (*see supra* § IV(A)(5)), Stafford's civil conspiracy claim fails, and the WHIO-TV Defendants are entitled to summary judgment on this claim.

### C. The Golf Club Defendants' Motion for Summary Judgment

#### 1. Civil Conspiracy

To the extent Stafford's amended complaint brings a § 1983 civil conspiracy claim against the Golf Club Defendants, he voluntarily dismissed it in his opposition memorandum. *See supra* § II; Doc. No. 205 at PageID 4286. Stafford's civil conspiracy claim, as noted, was the only federal claim he brought against the Golf Club Defendants. *See* Doc. No. 30. Thus, there are no pending federal law claims against the Golf Club Defendants, and they are entitled to summary judgment regarding this claim. *See supra* § II.

### D. State-Law Claims

Stafford brings multiple state-law claims against the Police Defendants, the WHIO-Defendants, and the Golf Club Defendants. *See id.*

"Once a district court dismisses all of the claims over which it has original jurisdiction, it acts squarely within its discretion by declining supplemental jurisdiction over the remaining state law claims and dismissing them without prejudice." *Booker v. City of Beachwood*, 451 F. App'x 521, 522–23 (6th Cir. 2011) (cleaned up) (citing 28 U.S.C. § 1367(c)(3). To that end, the Sixth Circuit has held, "generally, once a federal court has dismissed a plaintiff's federal law claims, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (cleaned up) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, No. 3:18-cv-417, 2021 WL 718843, at *6 (S.D. Ohio Feb. 24, 2021).

As explained above, the named Defendants are entitled to summary judgment on all of Stafford's federal claims. His only remaining claims arise under state law. In these circumstances, declining to exercise supplemental jurisdiction over Stafford's claims is warranted. Accordingly, Stafford's state-law claims merit dismissal without prejudice. *See Musson Theatrical, Inc. v. Fed.*

*Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims, or remanding them to state court if the action was removed"); *see also United Mine Workers of Am.*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well"); *Aquilina v. Wrigglesworth*, 759 F. App'x 340, 348 (6th Cir. 2018) (citation omitted) (In the interest of fairness, "a state court should have the opportunity to consider the merits of the Plaintiff's state law claim").

## V.  CONCLUSION

For the reasons stated herein, the three pending motions for summary judgment—filed by the Police Defendants, the WHIO-TV Defendants, and the Golf Club Defendants (Doc. Nos. 175, 185, and 186)—are each **GRANTED** with respect to Stafford's federal claims pled against those Defendants.  Stafford's remaining state-law claims are **DISMISSED WITHOUT PREJUDICE**. This case is **TERMINATED** on the docket.

**IT IS SO ORDERED.**

  August 8, 2025          　　　　　　　s/*Michael J. Newman*
　　　　　　　　　　　　　　　　　　Hon. Michael J. Newman
　　　　　　　　　　　　　　　　　　United States District Judge